Fremont-smith, J.
Plaintiff Debral Realty, Inc. brought this action for damages and injunctive relief alleging that, based on a “wrongful foreclosure,” the defendant committed unfair and deceptive trade acts or practices in violation of G.L. c. 93A. Plaintiff now moves for summary judgment on all counts of the complaint pursuant to Mass. R. Civ. P., Rule 56.
In response to plaintiffs motion for summary judgment, defendant Marlboro Cooperative Bank has denied the foreclosure in question was wrongful and moved for summary judgment on all counts on the plaintiffs complaint.
A hearing was held on February 1, 1994, and for the reasons stated below, plaintiffs motion is ALLOWED in part, and defendant’s motion is DENIED.
BACKGROUND
On March 3, 1980, Richard J. Budiyk and Silva Y. Budiyk executed a note to Marlboro Cooperative Bank (“the bank”) for the amount of $32,800. This note was secured by a first mortgage of even date granted to the bank by “Richard J. Budiyk and Silva Y. Budryk, husband and wife, as tenants by the entirety” as mortgagor on real estate located at 23 Hastings Street, Marlboro, MA (“the Hastings Street mortgage”). In relevant part, the Hastings Street mortgage, in addition to providing that it was to secure the payment of the note, contained the following language: “also to secure the payment of all other indebtedness of the mortgagor to the mortgagee hereafter arising” (hereinafter, “the dragnet clause”).
The plaintiff and the bank agree that there is no evidence of unfairness or oppressiveness in the relationship between the bank and the Budryks and that there is no evidence other than the document as to the intent of the bank or the Budryks in executing the Hastings Street mortgage.
On March 22, 1985, Richard J. Budiyk and Silva Y. Budryk, individually and as trustees of Westside Realty Trust, executed an additional note to the bank in the amount of $130,000 (“the West Main Street note”). This note was secured by a first mortgage of even date granted to the bank by “Richard J. Budryk and Silva Y. Budryk, Trustees of Westside Realty Trust” as mortgagor on real estate located at 214 West Main Street, Marlboro, MA. The West Main Street *554 mortgage makes no mention of the Hastings Street Mortgage.
On October 3, 1986, Richard J. Budiyk, individually and as trustee of Junior Realty Trust, executed a third note to the bank in the amount of $ 120,000 (“the Chestnut Street note”). This note was secured by a first mortgage of even date granted to the bank by “Richard J. Budryk, Sr., Trustee of Junior Realty Trust” as mortgagor on real estate located at 55 Chestnut Street, Marlboro, MA. The Chestnut Street mortgage makes no mention of the Hastings Street mortgage.
On March 11, 1989, the Budryks granted the plaintiff a junior mortgage on the West Main Street property to secure payment of a loan. On March 20, 1989, the Budryks granted the plaintiff junior mortgages on the Hastings Street property and the Chestnut Street property to secure the payments of respective loans. On January 31, 1991, the plaintiff foreclosed its mortgages on all three previously mentioned properties and became the owner of the properties subject to the bank’s mortgages.
In February, 1991, the plaintiff ceased making monthly payments to the bank on the West Main Street and Chestnut Street notes. Although payments continued to be made on the Hastings street note, and plaintiff has offered to pay off the Hastings Street note, the bank subsequently placed all three of the loans into default,[1] and commenced actions to foreclose on all three properties. On August 14, 1992, this Court (Connolly, J) denied plaintiffs request for an injunction barring the foreclosure on the Hastings Street property. The bank foreclosed on the Hastings Street property on August 17, 1992, to satisfy the outstanding balance on the second and third loans.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, supra.
Mortgages covering future advances are valid in Massachusetts where such advances are made prior to the intervention of other liens, even though the subsequent liens are secured by other collateral sources. Everett Credit Union v. Allied Ambulance Services, Inc., 12 Mass.App.Ct. 343, 346 (1981). In the case at bar, both of the loans executed after the Hastings Street mortgage were incurred prior to the intervention of plaintiffs junior mortgage on the property. Accordingly, the dragnet clause in the Hastings Street mortgage is valid, and the bank’s foreclosure was lawful if the dragnet clause was intended to cover the properties in question.
Dragnet clauses are narrowly construed where they are used oppressively or as a device for fraud. 12 Mass.App.Ct. at 347. The parties agree, however, that there is no evidence of unfairness or oppressiveness in the relationship between the Budryks and the bank concerning the Hastings Street mortgage. Accordingly, there is no basis for a narrow construction of the clause in question.
As was stated in Financial Acceptance Corp. v. Garvey, 6 Mass.App.Ct. 610, 613 (1978), the “guiding principle in construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage.” In Everett Credit Union v. Allied Ambulance Service, Inc., supra, the Court held that, in cases where there is no evidence of unfairness or oppressiveness in the relationship between the parties to the mortgage and no evidence as to the intent of the parties in executing the mortgage, the dragnet clause should be considered to have been intended to operate as written. 12 Mass.App.Ct. at 347. As the parties agree that there is no evidence as to the parties’ intent when executing the Hastings Street mortgage and no oppressiveness or unfairness in the relationship between the bank and the Budryks, it follows as a matter of law that the parties intended it to operate as written.
While it is true that the subsequent loans, mortgages and commitment letters did not mention the Hastings Street property and that each of the two subsequent loans had its own security, this does not indicate that the bank did not rely on the Hastings Street mortgage when it made the subsequent loans. The mere fact that a later loan does not make reference to the initial mortgage and has its own collateral has been held insufficient to constitute a waiver by the bank of the dragnet clause provision. 12 Mass.App.Ct. at 347. Hence, the dragnet clause’s applicability here is unhindered by the fact that the subsequent loans had their own security and made no mention of the Hastings Street mortgage.
The plaintiff further argues that Everett Credit Union v. Allied Ambulance Services, Inc., is inapplicable here because, in Everett, the two subsequent mortgages were under the same name as the original mortgagor, so that a title search at the Registry of Deeds would have revealed the prior mortgages, whereas here it would not. However, Everett did not limit its holding to mortgages on record, and in any event, a search of the grantor index by plaintiff would have given notice of the terms of the first mortgage, including the “dragnet clause.”
*555 While the dragnet clause is therefore to be the enforced as written, the question remains as to what loans the dragnet clause was intended to cover.
As written and recorded, the Hastings Street mortgage discloses the parties intent for it to secure payment of a note of even date and “also to secure the payment of all other indebtedness of the mortgagor to the mortgagee hereafter arising." (Emphasis added.) The Hastings Street mortgage, however, also defined the “mortgagor” as follows: “Richard J. Budryk and Silva Y. Budryk, husband and wife, as tenants by the entirety . .. hereinafter called the mortgagor.” Accordingly, the dragnet clause, by its terms, does not encompass the future debts except those of Mr. and Mrs. Budryk “as tenants by the entirety.” As Richard Budryk signed the note on the Chestnut Street property in his individual capacity and as Trustee of Junior Realty Trust, it is clearly not covered by the dragnet clause in question. On the other hand, the West Main Street note was signed by Richard and Silva both individually, and as trustees of the Westside Realty Trust. While their signature as trustees clearly falls outside the ambit of the dragnet clause, the document is ambiguous regarding the intent of the parties when the Budryks also signed individually. Hence, there is a disputed issue of fact as to whether the West Main Street loan was intended to be secured by the Hastings Street mortgage and whether, upon default of the West Main Street loan by the plaintiffs, the bank had any right to foreclose the Hastings Street property.
ORDER
For the reasons set forth above, it is hereby ORDERED that plaintiffs motion for summary judgment is ALLOWED with respect to the foreclosure of the Hastings Street property in satisfaction of the Chestnut Street note and DENIED with respect to the foreclosure of the Hastings Street property in satisfaction of the West Main Street note.
The defendant’s motion for summary judgment is DENIED.

 The bank placed the note secured by the Hastings Street property into default based on its belief that defaults on the Chestnut Street and West Main Street notes also constituted a default of the Hastings Street note.